# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN M. ULRICH, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 16 C 10488 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| PROBALANCE, INC., | ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff John M. Ulrich has filed a class action complaint, in which he alleges violations of state consumer fraud acts, breach of express warranty, and unjust enrichment. Defendant Probalance, Inc. ("Probalance") has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Probalance's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Probalance, a Florida corporation, is a "health and fitness company that sells various liquid protein products." (Compl., ¶ 11, ECF No. 1.) Probalance's protein drinks, or "dietary supplements," include Probalance Protein Shot, Probalance Protein Shot Plus Energy, Probalance Protein Shot XL, and Probalance Protein Water ("the Products"). (*Id.* ¶¶ 1, 24.)

Plaintiff alleges in his complaint that on October 10, 2016, he "purchased four bottles of the Product from CVS/Pharmacy for $2.67 each, plus tax," without specifying which of the four Products he purchased. (*Id.* ¶ 10.)[1] The front labels of all of the Products prominently display the number of grams of protein contained in each bottle. The back labels show the same protein

---

[1] The complaint defines the term "Products" as the four aforementioned dietary supplements (*id.* ¶ 1), but it is impossible to tell from the allegations of the complaint whether the phrase "four bottles of the Product" in paragraph 10 means four bottles of one of the Products, one bottle of each of the Products, or some other configuration.

content figures, as well as, in some cases, the percent daily reference value ("DRV") of protein that each bottle contains.

The gravamen of the complaint rests on plaintiff's allegations that Probalance's products are misleadingly labeled with respect to their protein content. Plaintiff alleges that the protein in Probalance's products is a blend of "predominant[ly]" low-quality "collagen protein isolate" and a smaller amount of higher-quality proteins such as whey and casein. (*Id.* ¶ 15.) Because collagen protein is less digestible, plaintiff alleges, it is as if Probalance's products contain less protein than Probalance claims on its labels.

Under certain circumstances (which the Court will discuss more fully below), federal regulations require manufacturers such as Probalance to use a testing methodology known as the Protein Digestibility Corrected Amino Acid Score ("PDCAAS") to calculate a "corrected amount of protein" per serving for purposes of labeling their products. Under PDCAAS testing, the subject protein "is compared to a standard amino acid profile" and receives a score between 0 and 1.0, with a score of 1.0 indicating "maximum amino acid digestibility." (*Id.* ¶ 26.) According to plaintiff, common protein supplements such as whey and casein receive scores of 1.0, but "meat and soybeans (0.9), vegetables and other legumes (0.7), and whole wheat and peanuts (0.25-0.55) all provide diminished protein digestibility." (*Id.*) Collagen protein isolate, plaintiff alleges, has a PDCAAS of 0. (*Id.* ¶ 29.) Thus, according to plaintiff, the statements that Probalance makes on the Product labels concerning the amount of protein in the Products are misleading because at least some of the protein is virtually indigestible.

Plaintiff's complaint contains four counts: Count I, violation of state consumer fraud acts (on behalf of a multi-state class); Count II, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (on behalf of an Illinois subclass, in the alternative

to Count I); Count III, breach of express warranty (on behalf of a national class); and Count IV, unjust enrichment (in the alternative to Count III).

## DISCUSSION

### I. LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

"Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss any claim for which the Court lacks subject-matter jurisdiction, such as lack of standing." *Bohn v. Boiron, Inc.*, No. 11 C 8704, 2013 WL 3975126, at *2 (N.D. Ill. Aug. 1, 2013). Where a defendant seeks

3

dismissal under Rule 12(b)(1) because the complaint lacks sufficient allegations to establish standing, courts should evaluate the sufficiency of the allegations by "us[ing] *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

A plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To do so, the plaintiff must "plead[] facts that make the allegation of fraud plausible." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). The complaint must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). Stated differently, it must provide the "who, what, where, when and how" of the alleged misrepresentations. *Bank of Am., Nat. Ass'n, v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). However, Rule 9(b) permits "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally"; that is, allegations of intent or other mental states need only meet the plausibility standard set by Rule 8 and described in *Twombly* and *Iqbal*, not Rule 9(b)'s higher particularity standard. *See Iqbal*, 556 U.S. at 686-87.

## II.  ANALYSIS

Probalance moves to dismiss for failure to state a claim and lack of standing.

### A.  FDCA PREEMPTION

Probalance argues that the Court should dismiss plaintiff's claims, all of which are based on state law, because the Food, Drug and Cosmetics Act ("FDCA") preempts them.

4

The FDCA "does not provide a private right of action." *Gubala v. HBS Int'l Corp.*, No. 14 C 9299, 2016 WL 2344583, at *2 (N.D. Ill. May 4, 2016). However, its labeling requirements may be privately enforced via state-law causes of action, so long as the effect of the governing state law is to impose labeling requirements that are identical to requirements of the FDCA; the FDCA expressly preempts any state-law requirement for product labeling that is "not identical" to a requirement of the FDCA. *See* 21 U.S.C. § 343-1(a)(4)-(5); *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 U.S. Dist. LEXIS 163352, at *12 (N.D. Ill. Nov. 28, 2016). Under the FDCA's implementing regulations, a state-law requirement is "not identical to" a requirement of the FDCA if "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable provision (including any implementing regulation) . . . or [d]iffer from those specifically imposed by or contained in the applicable provision of [the Act]." 21 C.F.R. § 100.1(c)(4). Thus, a state-law claim may be based on a violation of the labeling requirements of the FDCA, but only if the state-law claim is identical to a violation of the FDCA, meaning that it imposes no labeling requirements different from or in addition to the requirements of the FDCA or its implementing regulations.

Food labels violate the FDCA if they are "false or misleading" in any way. 21 U.S.C. § 343(a); *see also* 21 C.F.R. § 101.13(i)(3) (product label may contain statements about the amount of a nutrient if they are "not false or misleading in any respect"). The FDCA's implementing regulations require a food product manufacturer to display certain nutritional information, such as, for example, the level of protein and other enumerated nutrients, on the product label. 21 C.F.R. § 101.9(a), (c). In particular, the label must "state the number of grams of protein in a

serving." 21 C.F.R. § 101.9(c)(7). The level of protein generally "may be calculated on the basis of the factor 6.25 times the nitrogen content of the food." *Id.*

However, "if a protein claim is made for the product," then the product label must not only state the amount of protein but also "the corrected amount of protein per serving, . . . calculated as a percentage of the . . . DRV for protein." 21 C.F.R. § 101.9(c)(7)(i). A "protein claim" is a "direct statement about the level" of protein in the product, *see* 21 C.F.R. § 101.13(b)(1); for example, the statements of protein content on the front labels of the Products are "protein claims" that trigger the corrected amount/percent DRV requirement of section 101.9(c)(7)(i). The "corrected amount" is the "actual amount of protein (gram) per serving multiplied by" the PDCAAS. 21 C.F.R. § 101.9(c)(7)(ii); *see* 21 C.F.R. § 101.9(c)(7)(i) (requiring calculation of "corrected amount of protein per serving" to be made "as determined in paragraph (c)(7)(ii) of this section").

Plaintiff's complaint is sloppily drafted in some respects, and his precise theory of how the Products violate these labeling requirements (and are therefore allegedly misleading in violation of the law) is difficult to pin down. The complaint could be read to assert as many as three different such theories.

The first two theories plainly pass muster, for purposes of Probalance's preemption argument, because they are based on requirements identical to those imposed by federal law. First, plaintiff's complaint can be read to allege that the labels of the two Products that fail to state the percent DRV are misleading in that respect. The implementing regulations clearly require a label to do exactly that whenever "a protein claim is made for the product," 21 C.F.R. § 101.9(c)(7)(i), as all four Product labels do. Thus, to the extent this is plaintiff's claim, it is not preempted.

Second, plaintiff's complaint could be read to assert that, to the extent that the Products state the percent DRV, the percent DRV is not correctly calculated according to the PDCAAS method. Section 101.9(c)(7)(ii) expressly requires the "corrected amount" of protein expressed as a percent DRV to be calculated according to the PDCAAS-adjusted method. Thus, to the extent this is plaintiff's claim, it is based on requirements identical to those of federal law, and therefore it is not preempted.[2]

Finally, the complaint could be read to allege that the protein content claims are misleading because they are not calculated according to the PDCAAS method. This theory is more difficult for plaintiff because, as the above discussion shows, the FDCA and its implementing regulations do not strictly require pure protein content claims (*i.e.*, statements of grams of protein) to be calculated according to the PDCAAS method. By the plain language of section 101.9(c)(7), the nitrogen method "may" be used to calculate protein content; a label *must* (or, in the language of the regulation, "shall") state the amount of protein as calculated according to the PDCAAS method *only* in expressing the percent DRV (which is only required if, as in this case, the product makes a protein claim). *See Porter*, 2016 U.S. Dist. LEXIS 163352, at *15 ("[P]rotein content *may* be calculated using the nitrogen method, but it also *must* be stated as a percentage of the Daily Reference Value using the corrected amount of protein. This alternative

---

[2] A harder question is whether plaintiff plausibly alleges that the percent DRV is incorrectly calculated; some courts have required plaintiffs in cases such as this to allege that they subjected the offending product to proper scientific testing. *See Durnford v. Musclepharm Corp.*, No. 15 CV 00413, 2015 WL 9258079, at *1, 4 (N.D. Cal. Dec. 18, 2015). But in this particular case, such allegations are not necessary. At least one of the Products is labeled to contain 15 grams of protein and 30 percent DRV of protein, and it lists "collagen peptides" as an ingredient. (Compl. ¶ 25.) Based on a total DRV of 50 grams, as the regulations prescribe, 15 grams is exactly 30 percent. Thus, unless Probalance adjusted both numbers for digestibility (which it has not claimed to have done), and assuming the truth of plaintiff's allegation that the Products contain significant amounts of relatively indigestible collagen protein isolate rather than higher-quality protein, it is a plausible inference that Probalance has not calculated the percent DRV by the PDCAAS-adjusted method, as federal regulations expressly require it to do. Thus, plaintiff's allegation that the percent DRV is improperly calculated is plausible.

7

to the nitrogen method is only required in the statement of percentage; it is not required for statements of absolute protein content.")

However, in his response brief, plaintiff argues that some recent cases in this district have permitted claims such as his to proceed because, even if the regulations do not *require* manufacturers to calculate protein content by the PDCAAS-adjusted method, it may nevertheless be misleading in a particular context to use the nitrogen method, and misleading labeling violates the FDCA and accompanying regulations. *See id.* at \*16; *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at \*12 (N.D. Ill Mar. 15, 2016).

At first blush, it may seem that these cases are distinguishable because elements of the labels not present in this case made the protein claims in those cases misleading: in *Porter*, the manufacturer made a front-label protein claim stating that its product contained "60g *Premium* Protein," 2016 U.S. Dist. LEXIS 163352, at \*16 (emphasis added); in *Gubala*, the front label stated that the product contained "26 grams of *high-quality* protein," 2016 WL 1019794, at \*12 (emphasis added).

But, although Probalance did not use adjectives such as "premium" and "high-quality" to describe the protein in its Products, plaintiff's claim that Probalance's labels are misleading is plausible nonetheless. According to plaintiff, Probalance mixed into its Products collagen protein isolate, which is a form of protein of such low quality that it is essentially indigestible. Assuming the truth of those allegations, it appears to be a fair inference that Probalance's use of collagen protein isolate in its blend of proteins must have reduced the digestibility of the protein in the Products, resulting in Products that effectively had less protein than they advertised—which, particularly considering that these Products were dietary supplements, was arguably misleading.

Thus, to the extent that plaintiff claims that Probalance violates state law by making protein claims that are deceptive or misleading because they do not calculate the protein content according to the PDCAAS-adjusted method, plaintiff is not asserting that Probalance violated any state-law requirements different from or additional to the requirements of the FDCA and its implementing regulations. His claims are not preempted.

### B. ARTICLE III STANDING

Probalance argues that even if plaintiff's claims are not preempted, he lacks standing to raise them to the extent his claims pertain to Products he did not purchase and to the extent he seeks injunctive relief. In order to establish Article III standing, a plaintiff must show the following: he has suffered an injury-in-fact that is both (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; the injury is fairly traceable to the challenged action of the defendant; and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Even a violation of a federal statute does not confer standing unless the plaintiff has suffered a sufficiently concrete injury. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016) ("Particularization is necessary to establish injury in fact, but it is not sufficient."). A "concrete" injury must be "*de facto*"; that is, it must actually exist. *Id.*; *see O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct.") (quoting *Mass v. Mellon*, 262 U.S. 447, 488 (1923)).

### *1.     Product Not Purchased*

The allegations of the complaint do not reveal whether plaintiff purchased one bottle of each of the four Products or four bottles of one Product, and if plaintiff did not purchase all four of them, Probalance argues, he lacks standing to assert claims based on violations related to products he did not purchase. Probalance relies heavily on *Porter*, which held in similar circumstances that, regardless of the fact that the case was a putative class action, the plaintiffs could not "establish an injury-in-fact caused by products plaintiffs did not purchase" because "'a person cannot predicate standing on injury which he does not share.'" 2016 U.S. Dist. LEXIS 163352 at *9-10 (quoting *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002)).

In response, plaintiff argues that he does "share" the injuries of anyone who purchased any of the four Products because these Products are substantially similar and their labels are misleading in substantially similar ways. District courts have frequently accepted this argument in cases like this one; in fact, it appears that "the majority of courts that have considered the issue 'hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *Wagner v. Gen. Nutrition Corp.*, No. 16 C 10961, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017) (quoting *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014)); *see also* 1 *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ("A substantial number of courts have decided that a plaintiff may have standing to assert claims on behalf of class members based on products he or she did not purchase as long as the products and alleged misrepresentations about a purchased product are substantially similar. In those cases, the substantial similarity determination is a context-specific analysis, but frequently entails reference to whether the challenged products are of the same kind, whether they are composed of

largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling."). These courts "consider not only physical similarities but also the misrepresentations' similarities." *Mednick*, 2014 WL 6474915, at *3.

At least for purposes of the present case, the Court is persuaded to follow *Wagner*, *Mednick* and like decisions that consider whether the products and alleged misrepresentations are substantially similar. In this case, all of the Products are protein supplements sold by Probalance, and all of them have labels that are misleading, plaintiff alleges, because they make protein content claims based at least partially on amounts of low-quality collagen protein isolate that is effectively indigestible. The alleged misrepresentations are the same, they all relate to the Products' quantity of protein, which "fill[s] the same function" in each Product and is "used in the same manner" in each Product, and the protein claims are "inaccurate" in "the same manner on every" Product. *See id.* at *4. Whatever differences there may be among the Products, they are irrelevant because the Products are all alike with respect to the "specific component" that is the subject of plaintiff's claims. *Id.* Ultimately, the Court fails to see any meaningful difference between the injury suffered by someone who purchased Probalance Protein Shot and the injury of another person who purchased Probalance Protein Shot XL or one of the other Products. The Products and the alleged misrepresentations are substantially similar, so plaintiff has standing regardless of whether he purchased all four of the Products or only some of them.

### 2. *Injunctive Relief*

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects," *O'Shea*, 414 U.S. at 495-96, or by "a sufficient likelihood that [plaintiff] will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Probalance claims that

plaintiff lacks standing to seek injunctive relief because he has alleged only that he purchased Probalance Products on one discrete occasion in October 2016, not that he will purchase them again in the future.

Most courts to have considered the issue agree with Probalance that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice. *See in re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15 CV 5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) (citing 1 *McLaughlin on Class Actions* § 4.28 (13th ed. 2016) ("[M]ost courts . . . have ruled that a plaintiff who is a former customer who provides no concrete basis to conclude that he or she will purchase the product at issue in the future . . . lacks standing to pursue injunctive relief on behalf of a consumer class because the plaintiff is unlikely to suffer future harm.")); *see also Mednick*, 2016 WL 5390955, at *9; *Bohn*, 2013 WL 3975126, at *4. This Court is persuaded by the reasoning of these decisions. If plaintiff is aware of Probalance's allegedly deceptive practice, then he faces no "'real and immediate threat'" that Probalance's misleading labels will deceive him again in the future. *Bohn*, 2013 WL 3975126, at *3 (quoting *Lyons*, 461 U.S. at 102). Plaintiff cites cases to the contrary in his response brief, but the Court agrees with defendant that these cases are unpersuasive to the extent they reason that a plaintiff's standing to pursue injunctive relief may be premised on "the prospect that *other* consumers may be deceived by" the defendant's products. *See Bohn*, 2013 WL 3975126, at *3 ("'[A]s important as consumer protection is, it is not within the Court's authority to carve out an exception to Article III's standing requirements to further the purpose of . . . consumer protection laws.'") (quoting *Mason v. Nature's Innovation, Inc.*, No. 12 CV 3019, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013)).

The Seventh Circuit seems likely to agree, based on its reasoning in a similar context that a plaintiff who was already aware of the defendant's deceptive sales practices could not obtain injunctive relief because he "is not likely to be harmed in the future." *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) ("'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'") (quoting *O'Shea*, 414 U.S. at 495). Although plaintiff cites a decision that has dismissed this portion of *Camasta* as *dicta*, *see Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016), the Court finds the Seventh Circuit's reasoning compelling, regardless of whether it is *dicta*. *See in re Herbal Supplements*, 2017 WL 2215025, at *8 ("Even if *Camasta* were *dicta*, as the court found in [*Le*], it is persuasive."). Plaintiff lacks standing to pursue injunctive relief against Probalance.

### C. PLEADING STANDARDS

Probalance argues that, even if plaintiff's claims are not preempted and even if he has standing, his complaint fails to meet federal pleading standards.

#### *1. Breach of Express Warranty*

Probalance argues that plaintiff fails to meet his pleading burden on the breach of express warranty claim because he has failed to allege pre-suit notice of the breach. Probalance argues that under section 2-607 of the Uniform Commercial Code and Illinois law, a consumer is required to notify the seller of any breach within a reasonable time of discovering it to give the seller an opportunity to cure the breach without a lawsuit, or be barred from any judicial remedy. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996).

Plaintiff responds that he meets the exception to the notice requirement for cases in which the seller has "actual knowledge of the defect of the particular product." *Id.* According to

13

plaintiff, Probalance was always fully aware that its protein content claims misled consumers, who would not receive the full benefit of the amount of protein they consumed because and to the extent that the protein was significantly composed of collagen protein isolate rather than a protein with a higher PDCAAS score.

Plaintiff cites some district court decisions that have accepted this argument, *see, e.g.*, *Mednick*, 2014 WL 6474915, at *6, but in reply, Probalance cites one that has cast doubt on it by explicitly criticizing the decisions plaintiff has cited, *see Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 U.S. Dist. LEXIS 129494, at *31-32 (N.D. Ill. Sep. 22, 2016). The Court is persuaded by *Muir*'s discussion of the issue. The purpose of the pre-suit notice requirement is to give sellers the opportunity to resolve breaches short of litigation, but if sellers are not apprised of "the trouble with a particular product purchased by a particular buyer," regardless of whether they are generally "aware of problems with a particular product line," then they have no opportunity to resolve that buyer's problem before litigation ensues. *Id.* (citing *Connick*, 675 N.E.2d at 591-92) ("As Judge Learned Hand stated regarding section 2-607's predecessor: 'The notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach.'") (quoting *Am. Mfg. Co. v. United States Shipping Bd. Emergency Fleet Corp.,* 7 F.2d 565, 566 (2d Cir. 1925)). Plaintiff has not alleged that he provided pre-suit notice to Probalance, and he was required to do so in order to bring a breach of warranty claim, regardless of whether Probalance had knowledge generally of the fact that it used collagen protein isolate in its Products and did not adjust the labeling for digestibility. Plaintiff's breach of warranty claim is dismissed.

### 2. *Consumer Fraud Claims*

Plaintiff asserts claims under the ICFA and, if a multi-state class is certified, like statutes with identical elements in other jurisdictions. "The elements of a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/2, are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick*, 675 N.E.2d at 593 (internal citation altered). Probalance argues that plaintiff's consumer fraud claims fail because they do not sufficiently allege (a) Probalance's intent to deceive consumers; (b) proximate cause; or (c) damages.

#### a. Intent to Deceive

"When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Probalance argues that plaintiff fails to plead with particularity that Probalance acted with intent to deceive. But, as explained above, the plain language of Federal Rule of Civil Procedure 9(b) requires plaintiff to allege only "the circumstances constituting fraud" with "particularity"; intent "may be alleged generally." Plaintiff alleges at least generally that Probalance acted with the intent to deceive, and it is reasonable to infer deceptive intent from Probalance's alleged misconduct (namely, failing to adjust its protein claims to account for the lesser digestibility of the protein it used in its Products, as revealed by the PDCAAS testing that federal regulations require under the circumstances). No more particular allegations are required under Rule 9(b). *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 704 (N.D. Ill. 2016); *Ciszewski v. Denny's Corp.*, No. 09

CV 5355, 2010 WL 1418582, at *2 (N.D. Ill. Apr. 7, 2010); *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 911 (N.D. Ill. 2008).

### b. **Proximate Cause**

Probalance argues that plaintiff does not sufficiently plead that the allegedly deceptive labels proximately caused his injury; that is, according to Probalance, plaintiff never alleges that, "but for the challenged label claim(s), he would not have purchased the Product[s]." (Def.'s Mem. at 11, ECF No. 14.) In fact, as Probalance recognizes, plaintiff does allege (although in a portion of the complaint addressed to unjust enrichment) that he "would not have purchased the Product if the true facts would have been known." (Compl. ¶ 69.) But in any case, Probalance's argument implies an actual reliance element that the ICFA does not actually contain. *See Anderson v. Klasek*, 913 N.E.2d 615, 618 (Ill. App. Ct. 2009) ("Unlike common law fraud, 'the Consumer Fraud Act does not require actual reliance, an untrue statement regarding a material fact, or knowledge or belief by the party making the statement that the statement was untrue.'") (quoting *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 754 (Ill. 1994)). Plaintiff is only required to allege a deceptive act occurring in commerce on which Probalance intended consumers to rely. *Martin*, 643 N.E.2d at 754. Of course, Probalance is correct that plaintiff can only recover under the ICFA for injuries proximately caused by the alleged deceptive business practice, *see Connick*, 675 N.E.2d at 502, but Probalance has not demonstrated that this principle requires plaintiff to prove that he would not have purchased the Products but for the misleading labeling. Plaintiff alleges that Probalance labeled its Products in such a way as to deceive consumers into purchasing them in the belief that they were getting the benefit of an advertised amount of protein but, due to the protein's limited digestibility, it was as if they were getting less; that is, plaintiff and other purchasers were allegedly harmed because they received less than

16

they bargained for. Assuming the allegations are true, Probalance's deception caused harm to plaintiff and other purchasers, so Probalance's proximate cause argument fails.

### c. Damages

Probalance argues that plaintiff has not stated in what way he was damaged by Probalance's deception. But plaintiff is not required to plead in his complaint the precise damages theory on which he will ultimately rely or the precise amount of damages he suffered. It is sufficient to allege that he "suffer[ed] a pecuniary loss by receiving goods that are worth less than was promised." *See Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 931 (N.D. Ill. 2015) (reasoning that plaintiffs stated ICFA claim because they alleged that they paid more for defendant's whiskey than it was worth). It is a reasonable inference from plaintiff's allegations that the Products were worth less than he paid for them because they were protein supplements that contained at least some effectively indigestible protein.

Probalance's arguments that plaintiff has failed to state a plausible consumer fraud claim are all without merit. Probalance's motion to dismiss is denied as to plaintiff's consumer fraud claims.

### 3. Unjust Enrichment

Probalance has also moved to dismiss plaintiff's unjust enrichment claim, arguing that it is duplicative of the consumer fraud claim and, "to the same extent the ICFA claim fails, the unjust enrichment claim fails as well." (Def.'s Mem. at 15, ECF No. 14 (citing *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517-18 (7th Cir. 2011)). As the Court has explained above in Part III.C.2., plaintiff's consumer fraud claim survives Probalance's motion to dismiss, so the unjust enrichment claim also survives.

## **CONCLUSION**

Probalance's motion to dismiss is denied in part and granted in part, without prejudice to filing an amended complaint by September 15, 2017, if plaintiff can do so in compliance with the Federal Rules of Civil Procedure. The motion is granted as to plaintiff's claims for injunctive relief and breach of express warranty, which are dismissed. It is otherwise denied.

**SO ORDERED.**

 **ENTERED: August 18, 2017**

 _____
 **HON. JORGE ALONSO**
 **United States District Judge**